# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| WILLIAM PRINCE, individually and on behalf of similarly situated persons,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>QS AMERICA, INC.,<br><br>　　　　　Defendant. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff William Prince, individually and on behalf of all other similarly situated delivery drivers, for his Complaint against Defendant, alleges as follows:

1. Defendant QS America, LLC ("QS America") operates approximately 42 Papa John's franchise stores in Georgia, Alabama, Florida and Tennessee. QS America employs delivery drivers who use their own automobiles to deliver pizza and other food items to its customers. Instead of reimbursing delivery drivers for the reasonably approximate costs of the business use of their vehicles, QS America uses a flawed method to determine reimbursement rates that provides such an unreasonably low rate beneath any reasonable approximation of the expenses they incur that the drivers' unreimbursed expenses cause their wages to fall below the federal minimum wage during some or all workweeks.

2. Defendant also requires its employees to pay for uniform their own items including Papa John's distinctive logoed shirts, sweatshirts, coats and hats. Such charges further reduce their net wages below the minimum wage.

3. Plaintiff William Prince brings this lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* to recover unpaid minimum wages owed to himself and similarly situated delivery drivers and non-supervisory employees employed by QS America at its Papa John's stores.

## Jurisdiction and Venue

4. The FLSA authorizes court actions by private parties to recover damages for violation of its wage and hour provisions. Jurisdiction over Plaintiff's FLSA claim is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 (federal question).

5. Venue in this District is proper under 28 U.S.C. § 1391 because QS America maintains its principal place of business in this District, QS America operates Papa John's franchise stores in this District, and a substantial part of the events giving rise to the claim herein occurred in this District.

## Parties

6. Defendant QS America is a Georgia limited liability company maintaining its principal place of business in Alpharetta, Georgia, which is located within the Atlanta Division of the Northern District of Georgia.

7. Plaintiff William Prince was employed by QS America from approximately August 2012 to April 2015 as a delivery driver at its Papa John's store in Rome, Georgia. Plaintiff Prince's consent to pursue this claim under the FLSA is attached hereto as "Exhibit 1."

## General Allegations

### *QS America's Business*

8. QS America owns and operates approximately 42 Papa John's franchise stores in Georgia, Alabama, Florida and Tennessee.

9. QS America's Papa John's stores employ delivery drivers who all have the same primary job duty: to deliver pizzas and other food items to customers' homes or workplaces.

### *QS America's Flawed Automobile Reimbursement Policy*

10. QS America requires its delivery drivers to maintain and pay for safe, legally-operable, and insured automobiles when delivering pizza and other food items.

11. QS America's delivery drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses ("automobile expenses") while delivering pizza and other food items for the primary benefit of QS America.

12. QS America's delivery driver reimbursement policy reimburses drivers on a per-delivery basis, but the per-delivery reimbursement equates to far below the IRS business mileage reimbursement rate or any other reasonable approximation of the cost to own and operate a motor vehicle. This policy applies to all of QS America's delivery drivers.

13. The result of QS America's delivery driver reimbursement policy is a reimbursement of much less than a reasonable approximation of its drivers' automobile expenses.

14. During the applicable FLSA limitations period, the IRS business mileage reimbursement rate ranged between $.555 and $.575 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a sedan between $.58 and $.608 per mile between 2012 and 2015 for drivers who drive a sedan approximately 15,000 miles per year. These figures represent a reasonable approximation of the average cost of owning and operating a vehicle for use in delivering pizzas.

15. The driving conditions associated with the pizza delivery business cause more frequent maintenance costs, higher costs due to repairs associated with driving, and more rapid depreciation from driving as much as, and in the manner of, a delivery driver. QS America's delivery drivers further experience lower gas

4

mileage and higher repair costs than the average driver used to determine the average cost of owning and operating a vehicle described above due to the nature of the delivery business, including frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures.

16. QS America's reimbursement policy does not reimburse delivery drivers for even their ongoing out-of-pocket expenses, much less other costs they incur to own and operate their vehicle, and thus QS America uniformly fails to reimburse its delivery drivers at any reasonable approximation of the cost of owning and operating their vehicles for QS America's benefit.

17. QS America's systematic failure to adequately reimburse automobile expenses constitutes a "kickback" to QS America such that the hourly wages it pays to Plaintiff and QS America's other delivery drivers are not paid free and clear of all outstanding obligations to QS America.

18. QS America fails to reasonably approximate the amount of its drivers' automobile expenses to such an extent that its drivers' net wages are diminished beneath the federal minimum wage requirements.

19. In sum, QS America's reimbursement policy and methodology fail to reflect the realities of delivery drivers' automobile expenses.

*QS America's Failure to Reasonably Reimburse Automobile Expenses Causes Minimum Wage Violations*

20. Regardless of the precise amount of the per-delivery reimbursement at any given point in time, QS America's reimbursement formula has resulted in an unreasonable underestimation of delivery drivers' automobile expenses throughout the recovery period, causing systematic violations of the federal minimum wage.

21. Plaintiff Prince was paid $7.25 per hour during his employment with QS America, including a tip credit applied to the time he spent delivering pizzas.

22. The federal minimum wage has been $7.25 per hour since July 24, 2009. http://www.dol.gov/whd/minwage/chart.htm.

23. Plaintiff Prince drove a 2001 Chevrolet Malibu while delivering pizzas for QS America.

24. During Plaintiff Prince's employment by QS America, the per-delivery reimbursement rate at the store where Plaintiff Prince worked ranged from approximately $1.00 per delivery to $1.40 per delivery.

25. During his employment with QS America, Plaintiff Prince experienced an average round-trip delivery distance of at least 6 miles per delivery.

26. Thus, during the applicable limitations period, QS America's average effective reimbursement rate for Plaintiff Prince was approximately $.233 per mile or less ($1.40 per delivery / 6 average miles per delivery).

6

27. During this same time period, the IRS business mileage reimbursement rate ranged between $.555 and $.575 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the IRS rate as a reasonable approximation of Plaintiff Prince's automobile expenses, every mile driven on the job decreased his net wages by approximately $.322 ($.555 - $.23) per mile. Considering Plaintiff Prince's estimate of about 6 average miles per delivery, QS America under-reimbursed him about $1.932 per delivery ($.322 x 6 miles).

28. QS America did not ask Plaintiff Prince to track his actual automobile expenses, nor is he an expert in the field of calculating the cost of automobile usage. However, Plaintiff Prince's actual automobile expenses were at the very least $.40 per mile based on the true cost of owning a car calculated by Edmunds.com for comparable vehicles and based on driving 15,000.00 per year. Using even this conservative under-estimate of Plaintiff Prince's actual expenses, as opposed to the applicable IRS rate, every mile driven on the job decreased his net wages by about $.167 ($.40 - $.233), or about $1.002 ($.167 x 6 miles) per delivery.

29. During his employment by QS America, Plaintiff Prince typically averaged approximately 2 deliveries per hour.

30. Thus, depending on whether QS America's reimbursement rate is compared to the IRS rate or to a conservative under-estimate of Plaintiff Prince's actual expenses, Plaintiff Prince consistently "kicked back" to QS America between approximately $2.004 per hour ($1.002 per delivery x 2 deliveries per hour) and $3.864 ($1.932 per delivery x 2 deliveries per hour), for an effective hourly wage rate of about $3.386 ($7.25 per hour - $3.864 kickback) to $5.246 ($7.25 per hour - $2.004 kickback).

31. All of QS America's delivery drivers had similar experiences to those of Plaintiff. They were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

32. Because QS America paid its drivers a gross hourly wage at precisely, or at least very close to, the federal minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to QS America an amount sufficient to cause minimum wage violations.

33. While the amount of QS America's actual reimbursements per delivery may vary over time, QS America is relying on the same flawed policy and methodology with respect to all delivery drivers at all of its other Papa John's stores. Thus, although reimbursement amounts may differ somewhat by time or region, the

amounts of under-reimbursements relative to automobile costs incurred are relatively consistent between time and region.

34. QS America's low reimbursement rates were a frequent complaint of at least some of QS America's delivery drivers, including Plaintiff, yet QS America continued to reimburse at a rate much less than any reasonable approximation of delivery drivers' automobile expenses.

35. The net effect of QS America's flawed reimbursement policy is that it willfully fails to pay the federal minimum wage to its delivery drivers. QS America thereby enjoys ill-gained profits at the expense of its employees.

*Costs of Uniforms*

36. Defendant requires its non-supervisory employees to wear uniforms on the job in clean and presentable condition, including Papa John's distinctive logoed shirts, sweatshirts, coats and hats, so that those employees reflect the desired company branding and image.

37. Defendant requires its non-supervisory employees to purchase their own Papa John's logoed shirts, sweatshirts, coats and hats from Defendant through payroll deductions.

38. Repeat purchases from Defendant of uniform items are typical because of Defendant's requirement to wear such garments in clean and presentable condition.

39. Upon beginning his employment with Defendant, Plaintiff Prince purchased an initial logoed Papa John's shirt and hat from Defendant for approximately $18.00.

40. During his employment, Plaintiff Prince purchased approximately five additional Papa John's logoed shirts from Defendant for approximately $12.00 each.

41. During his employment, Plaintiff Prince purchased approximately two Papa John's logoed sweatshirts from Defendant for approximately $36.00 each.

42. During his employment, Plaintiff Prince purchased a Papa John's logoed coat from Defendant for approximately $56.00.

43. During his employment, Plaintiff purchased an additional Papa Johns logoed hat from Defendant for approximately $7.00.

44. Defendant has similarly charged its other non-supervisory employees for such uniform items.

45. Defendant has not reimbursed its non-supervisory employees for the purchase cost of their uniform items.

46. Because Plaintiff was paid exactly the minimum wage, including a tip credit, before deducting the purchase price of the uniform items, the cost of those uniform items caused him to receive subminimum net wages (*e.g.,* $7.25 minimum wage nominally paid x 40 hours per week = $290.00 total wages nominally paid –

$12.00 cost of one Papa John's logoed shirt = $278.00 net pay received / 40 hours worked = $6.95 per hour subminimum net wage).

47. On information and belief, all of Defendant's non-supervisory employees had similar experiences to those of Plaintiff. They were subject to the same or substantially similar charges for uniform items, they were paid at or near the minimum wage before deducting the cost of uniforms, and Defendant has not reimbursed them for the cost of their uniforms.

## Collective Action Allegations

48. Plaintiff brings this FLSA claim as an "opt-in" collective action on behalf of similarly situated delivery drivers pursuant to 29 U.S.C. § 216(b).

49. The FLSA claims may be pursued by those who opt-in to this case pursuant to 29 U.S.C. § 216(b).

50. Plaintiff, individually and on behalf of other similarly situated employees, seeks relief on a collective basis challenging QS America's practice of failing to pay employees federal minimum wage. The number and identity of other plaintiffs yet to opt-in may be ascertained from QS America's records, and potential class members may be notified of the pendency of this action via mail.

51. Plaintiff and all of QS America's delivery drivers are similarly situated in that:

a. They have worked as delivery drivers for QS America delivering pizza and other food items to QS America's customers;

b. They have delivered pizza and food items using automobiles not owned or maintained by QS America;

c. QS America required them to maintain these automobiles in a safe, legally-operable, and insured condition;

d. They incurred costs for automobile expenses while delivering pizzas and food items for the primary benefit of QS America;

e. They were subject to similar driving conditions, automobile expenses, delivery distances, and delivery frequencies;

f. They were subject to the same pay policies and practices of QS America;

g. They were subject to the same delivery driver reimbursement policy that under-estimates automobile expenses per mile, and thereby systematically deprived of reasonably approximate reimbursements, resulting in wages below the federal minimum wage in some or all workweeks;

h. They were reimbursed similar set amounts of automobile expenses per delivery;

    i.      They were paid at or near the federal minimum wage before deducting unreimbursed business expenses; and

    j.      They have been subjected to the same tip credit.

52. Plaintiff and all of QS America's non-supervisory employees are similarly situated in that:

    a.     Defendant requires them to wear uniforms on the job in clean and presentable condition, including such items as Papa John's distinctive logoed shirts, sweatshirts, coats and hats;

    b.     Defendant requires them to purchase their own Papa John's logoed shirts, sweatshirts, coats and hats from Defendant through payroll deductions;

    c.     Defendant has not reimbursed them for the purchase cost of their uniform items; and

    d.     They were paid at or near the federal minimum wage before deducting unreimbursed business expenses.

### Count I: Violation of the Fair Labor Standards Act of 1938

53. Plaintiff reasserts and re-alleges the allegations set forth above.

54. The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the

production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

55. QS America is subject to the FLSA's minimum wage requirements because it is an enterprise engaged in interstate commerce, and its employees are engaged in commerce.

56. At all relevant times herein, Plaintiff and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

57. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiff or other similarly situated delivery drivers.

58. Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

59. As alleged herein, QS America has reimbursed delivery drivers less than the reasonably approximate amount of its automobile expenses to such an extent that it diminishes these employees' wages beneath the federal minimum wage.

60. QS America knew or should have known that its pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the federal minimum wage.

61. QS America, pursuant to its policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiff and other similarly situated employees.

62. Plaintiff and all similarly situated delivery drivers are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy, in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in QS America's stores.

63. Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because QS America acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

64. QS America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find QS America is not liable for liquidated damages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

65. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by QS America from Plaintiff and all similarly situated employees. Accordingly, QS America is liable under 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated delivery drivers demand judgment against QS America and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Count II:  Violation of the Fair Labor Standards Act of 1938

66. Plaintiff reasserts and re-alleges the allegations set forth above.

67. The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §206(a).

68. QS America is subject to the FLSA's minimum wage requirements because it is an enterprise engaged in interstate commerce, and its employees are engaged in commerce.

69. At all relevant times herein, Plaintiff and all other similarly situated delivery drivers have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

70. Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from federal minimum wage obligations. None of the FLSA exemptions apply to Plaintiff or other similarly situated delivery drivers.

71. Under Section 6 of the FLSA, codified at 29 U.S.C. § 206, employees have been entitled to be compensated at a rate of at least $7.25 per hour since July 24, 2009.

72. As alleged herein, QS America has required its non-supervisory employees to purchase uniform items, which diminishes their wages beneath the federal minimum wage.

73. QS America knew or should have known that its pay and reimbursement policies, practices and methodology result in failure to compensate delivery drivers at the federal minimum wage.

74. QS America, pursuant to its policy and practice, violated the FLSA by refusing and failing to pay federal minimum wage to Plaintiff and other similarly situated employees.

75. Plaintiff and all similarly situated delivery drivers are victims of a uniform and employer-based compensation and reimbursement policy. This uniform policy,

in violation of the FLSA, has been applied, and continues to be applied, to all delivery driver employees in QS America's stores.

76. Plaintiff and all similarly situated employees are entitled to damages equal to the minimum wage minus actual wages received after deducting reasonably approximated automobile expenses within three years from the date each Plaintiff joins this case, plus periods of equitable tolling, because QS America acted willfully and knew, or showed reckless disregard for, whether its conduct was unlawful.

77. QS America has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result, Plaintiff and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wages under 29 U.S.C. § 216(b). Alternatively, should the Court find QS America is not liable for liquidated damages, Plaintiff and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

78. As a result of the aforesaid willful violations of the FLSA's minimum wage provisions, minimum wage compensation has been unlawfully withheld by QS America from Plaintiff and all similarly situated employees. Accordingly, QS America is liable under 29 U.S.C. § 216(b), together with an additional amount as

liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated delivery drivers demand judgment against QS America and request: (1) compensatory damages; (2) liquidated damages; (3) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (4) pre-judgment and post-judgment interest as provided by law; and (5) such other relief as the Court deems fair and equitable.

### Demand for Jury Trial

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Dated:    June 5, 2015                          Respectfully submitted,

   */s Ralph Jordan*
Ralph Jordan (GA Bar # 404977)
345 Eastcote Dr.
Atlanta, Georgia  30350
(404) 449-4861
Jalph.a.jordan@gmail.com

**PAUL McINNES LLP**
Richard M. Paul III (MO Bar #44233)
(*pro hac vice* forthcoming)
Jack D. McInnes (MO Bar #56904)
(*pro hac vice* forthcoming)
2000 Baltimore, Suite 100
Kansas City, Missouri  64108
Telephone:  (816) 981-8100
Facsimile:   (816) 981-8101
paul@paulmcinnes.com
mcinnes@paulmcinnes.com

**WEINHAUS & POTASHNICK**
Mark A. Potashnick (MO Bar # 41315)
(*pro hac vice* forthcoming)
11500 Olive Blvd., Suite 133
St. Louis, Missouri  63141
Telephone:  (314) 997-9150
Facsimile:   (314) 997-9170
markp@wp-attorneys.com

**ATTORNEYS FOR PLAINTIFF**