UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| WILLIAM PRINCE, individually and on behalf of similarly situated persons, <br><br> Plaintiff, <br><br> v. <br><br> QS AMERICA, INC., et al., <br><br> Defendants. | Case No. 1:15-cv-2033-TWT |

## PLAINTIFFS' APPLICATION FOR FEES AND COSTS

Plaintiffs' Counsel have fought tirelessly for over seven years on behalf of pizza delivery drivers across the nation who are oppressed by the pizza delivery industry's unreasonably low vehicle reimbursements. Through numerous hard-fought victories in related litigation against other pizza delivery companies in courts around the country, Plaintiffs' Counsel created such a favorable body of law that Defendants agreed to conditional certification. After a Court-approved notice was sent to Defendants' drivers, and the opt-in period closed, Defendants produced, and Plaintiffs' Counsel carefully analyzed, class payroll, reimbursement and delivery data. The parties were then able to settle the claims asserted in this case.

Having achieved a significant recovery for their clients, Plaintiffs' Counsel request one-third of the Settlement Fund as attorneys' fees, plus $3,082.01 for their costs incurred

to date. This request falls within the range of fee awards in other common fund cases within this Circuit and is warranted given Plaintiffs' Counsel's work in this and numerous similar claims, the risks overcome, and the outstanding result achieved for their clients. Plaintiffs' Counsel have earned the fee requested in this fee application.

## I.   Plaintiffs' Counsel Should Be Awarded One-Third of the Common Fund as Their Attorneys' Fees

### A.   The reasonable fee is a percentage of the common fund

The Eleventh Circuit has expressly endorsed the of the percentage-of-the-fund method in common fund claims. *Camden I Condo. Ass'n. v. Dunkle,* 946 F.2d 768, 773-75 (11th Cir. 1991) ("…we believe that the percentage of the fund approach is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *see also, e.g., Vogenberger v. ATC Fitness Cape Coral, LLC,* 2015 U.S. Dist. LEXIS 53960, *7-8 (M.D. Fla. Apr. 15, 2015) (recognizing that 11th Circuit "expressly endorsed" the percentage-of-the-fund method in *Camden I Condo. Ass'n.*), adopted at 2015 U.S. Dist. LEXIS 53961 (M.D. Fla. Apr. 24, 2015).

Under the Fair Labor Standards Act ("FLSA"), prevailing plaintiffs are entitled to recover their reasonable attorneys' fees. *See* 29 U.S.C. § 216(b). In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major

litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Following this guidance, the parties agreed that Plaintiffs' Counsel would receive one-third of the Settlement Fund as attorneys' fees plus reimbursement of out-of-pocket costs.

Where class counsel create a "common fund" both for the class and for fees, costs, and expenses, class counsel are entitled to receive their fee from the fund:

> Since [the late nineteenth century], this [Supreme] Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.... The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense.

*Boeing Co. v. Van Gemert*, 440 U.S. 472, 478 (1980).

The common-fund methodology applies where the claim would otherwise invoke a fee-shifting statute if the case were tried, like the FLSA does. *See, e.g., Vogenberger*, 2015 U.S. Dist. LEXIS 53960, at *2-3 & 7-10 (applying percentage-of-the-fund method in FLSA claim). In 1985, the United States Court of Appeals for the Third Circuit convened a Task Force that was given the express charge to develop "recommendations to provide fair and reasonable compensation for attorneys in those matters in which fee awards are provided by federal statute or by the fund-in-court doctrine." *Court Awarded Attorney Fees*, 108 F.R.D. 237, 238 (3d Cir. Task Force, 1985). The Third Circuit Task Force specifically examined the "fee-shifting" cases and categorized them as claims where the

determination of the fee "continues to be an adversary proceeding until resolution, *except when a statutory fee case is 'converted' into a fund case by settlement.*" *Id.* at 255 (emphasis added). After detailed analysis of the various methods for determining attorneys' fees, "the Task Force recommends that in the traditional common-fund situation *and in those statutory fee cases that are likely to result in a settlement fund from which adequate counsel fees can be paid*, the district court … should attempt to establish a percentage fee arrangement." *Id.* (emphasis added). Thus, under the Third Circuit Task Force's analysis, a statutory fee-shifting lodestar analysis would apply to a settlement *only* where the settlement fund is inadequate to pay the attorneys' fees, or where the amount of the fee remains adversarial. *See also Staton v. Boeing, Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (fees may be awarded as a percentage of a common fund where there is a fee-shifting statute because the parties are expected to negotiate and settle the fees as an element of damages).

The Eleventh Circuit has held that its district courts should also consider the "Johnson Factors" in deciding whether a particular percentage may be approved as reasonable. *Camden I Condo. Ass'n.*, 946 F.2d at 775 (referencing 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and later adopted by the Eleventh Circuit as "binding precedent" in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)); *see also, e.g., Vogenberger*, 2015 U.S. Dist. LEXIS 53960, at *2-3 & 7-10 (listing the 12 "Johnson Factors," but not specifically citing *Johnson*).

The percentage of the fund approach aids litigants and the courts because it

"directly aligns the interests of the class and its counsel and provides a powerful incentive for the *efficient prosecution and early resolution* of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 120 (2d. Cir. 2005) (emphasis added) (quoting *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, *25 (S.D.N.Y Nov. 26)). Thus, a fee award based on a percentage of the fund "incentivizes lawyers to maximize the Class recovery." *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006); *see also Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage of the fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome"); Silber and Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 534 (Summer 1998) ("Hence, under the percentage approach, the class members and the class counsel have the same interest – maximizing the recovery of the class.").

### B. The requested fee is reasonable under *Johnson*.

The 12 factors listed by the Fifth Circuit in *Johnson*, which have become commonly known as the "Johnson Factors," are (1) the time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.*, 488 F.2d at 717-719. Rarely are all of these factors relevant, particularly in a common fund situation, and the trial court has the discretion to determine which factors to weigh most heavily. Applying these factors here confirms the reasonableness of the requested one-third of the fund.

> i. ***Johnson* Factors (2), (3), (9), & (10): the novelty and difficulty of the questions presented; the skill, experience, reputation, and ability of the attorneys; and the "undesirability" of the case**

Minimum wage lawsuits based on under-reimbursed expenses were rare, and minimum wage suits based on under-reimbursed vehicle costs were extremely rate, before Plaintiffs' Counsel's extraordinary efforts on behalf of pizza delivery drivers. These cases provided significant and novel challenges, which were overcome by favorable decisions on pleading, certification, cognizability of federal and pendent state law claims, and methods of proof. *See, e.g., Wass v. NPC Int'l, Inc.*, 688 F.Supp.2d 1282, 1286 (D. Kan. 2010) ("Neither party has been able to cite to a case that directly addresses the application of the 'reasonable approximation' standard to reimbursement of expenses for purposes of a minimum wage claim."; "The present case does not involve a straightforward claim under the FLSA for unpaid amounts; rather, … [t]his case… demands a greater degree of specificity in pleading" than other FLSA cases.)). Under repeated threats of potential sanctions in both the *NPC* case and *Smith* v. *Pizza Hut, Inc.*,

6

Case No. 09-CV-01632 WDM-BNB (D. Colo.) *if* their theory proved incorrect, Plaintiffs' Counsel persisted because they believed in the merits of their case, and the Court ultimately endorsed their argument that a plaintiff need not prove his or her actual expenses, but can reasonably approximate those expenses. *Id*. This paved the way for conditional certification of FLSA claims and / or class certification of state wage and hour claims in several cases, and ultimately this settlement.

Moreover, Plaintiffs' Counsel have extensive experience in wage and hour litigation in general. (Declaration of Mark Potashnick, ¶¶ 4 & 5 ("Potashnick Decl.") (Ex. 1); Declaration of Richard Paul, ¶ 3 ("Paul Decl.") (Ex. 2).

Had Plaintiffs' Counsel not prevailed in this groundbreaking area of the law, the very significant relief made available under the terms of this settlement would never have materialized for these class members, and pizza delivery drivers would lack any practical or cost-efficient method of proving their claims. In light of the novelty and difficulty of the questions presented, the skill, experience, reputation, and ability of the attorneys, and the "undesirability" of the case, *Johnson* factors (2), (3), (9) and (10) all strongly support the requested fee.

### ii. *Johnson* Factors (5), (6), & (8): the contingent nature of the fee, and the amount involved and results obtained

The Supreme Court recognizes that the result achieved is "the most critical factor" in calculating a reasonable fee award is the degree of success obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *see also*

7

Fed. R. Civ. P. 23(h) advisory committee notes to 2003 amendments (explaining that the "fundamental focus" in determining a common fund attorneys' fee award "is the result actually achieved for class members"). All wage and hour actions pose significant risk to attorneys representing plaintiffs, who incur great expense and may devote thousands of hours of labor, that may yield no return at all. *E.g., Guyton v. Tyson Foods, Inc.*, Case No. 07-cv-00088 (S.D. Ia. April 26, 2012) (complete jury verdict for defendant in donning and doffing case); *Lopez v. Tyson Foods, Inc.*, Case No. 06-cv-459 (D. Neb. May 26, 2011) (same). But the risks were particularly acute in the early pizza delivery driver cases, where Plaintiffs' Counsel undertook cases far different from the typical FLSA case.

Despite the novelty of these claims, Plaintiffs' Counsel obtained exceptional recovery for pizza delivery drivers in their early cases and carried it over to this case. The crux of the task in determining the fee "is to determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order." *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) (reversing trial court's reduction of requested fee). The requested fee here is less than Plaintiffs' Counsel's customary contingent fee in wage and hour litigation, which is generally set between 35%-40% of any recovery. Potashnick Decl., ¶ 7; Paul Decl. ¶ 8. And in fact, in this case, Plaintiff Prince contracted with Plaintiffs' Counsel for an attorneys' fee of 35% of any recovery, after recovery of expenses. Potashnick Decl., ¶ 8; Paul Decl., ¶ 9.

The fact that rulings from other courts – obtained by Plaintiffs' Counsel - may have

helped them obtain early resolution of this case does not minimize the risk in this case. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636-637 (7th Cir. 2011). As explained by the Seventh Circuit in rejecting a similar argument, while these prior decisions may have bolstered Plaintiffs' position, no court of appeals has addressed these issues. The key liability and damages issues in such claims seeking recovery of minimum wage deficits caused by unreimbursed vehicle expenses remain untouched by appellate courts. *But see Sullivan v. PJ United,* 2016 U.S. App. LEXIS 9384 (11th Cir. May 23, 2016) (affirming, in appeal in which Plaintiff's Counsel here represented appellee, district court's denial of *vacatur* of arbitrator's award holding that the same FLSA claims by pizza delivery drivers may be arbitrated as a collective action despite arbitration agreement's inclusion of an express waiver of the right to pursue such claims collectively). Moreover, none of the other pizza delivery driver cases have been submitted a jury, thus leaving the ultimate resolution as a critical unknown. Trial would be expert-intensive and thus costly. Plaintiffs would need to provide documentary evidence, representative testimony, and expensive expert vehicle costing testimony sufficient to establish liability and damages for the class. Further, regardless of the outcome at trial, post-judgment appeals would be likely.

    **iii. *Johnson* Factors (1) & (4): Time and Labor Expended and Preclusion of Other Work**

Plaintiffs' Counsel have spent more than 123 hours litigating this case with no assurance of any recovery at all. (Potashnick Decl., ¶ 15; Paul Decl., ¶ 10). These hours

include time spent investigating the facts; reviewing documents produced by class members and Defendants; analyzing Defendants' payroll and delivery data; interviewing class members regarding their experiences working for Defendants; communicating with class members regarding the status and theory of the claims; creating dynamic computerized damage models; negotiating the terms of the settlement and the approval papers; and devising a formula for allocation of the common fund for the class. *See* Potashnick Decl., ¶ 15; Paul Decl. ¶ 10. This work necessarily precluded Counsel from pursuing other litigation opportunities. *Id.*

And while Counsel's lodestar does not even need to be considered, Plaintiffs' present lodestar equates to over $53,000.00, at their standard hourly rates applicable to both hourly and contingent work they perform. Potashnick Decl., ¶ 16; Paul Decl., ¶ 11. This will increase over time as Plaintiffs' Counsel will be required to expend significant additional time and effort to administer the settlement and likely respond to numerous inquiries by the opt-in Plaintiffs. The Court should also consider the fact that Plaintiffs' Counsel have pursued other similar cases on behalf of delivery drivers employed by other pizza chains and received far less than their lodestar in settlements as a result of the defendants' inability to pay, including one pizza franchise that filed bankruptcy just a few months before the trial setting. Paul Decl., ¶ 7.

In light of Plaintiffs' Counsel's time in this case—as well as the additional time required going forward—Plaintiffs' Counsel's request for attorneys' fees is reasonable

and should be approved.

### iv. *Johnson* Factor (12): Awards in Similar Cases

Fee awards of one-third of the fund created by the settlement are common in FLSA claims and other cases. *See, e.g, Vogenberger,* 2015 U.S. Dist. LEXIS at *9-10 (finding 33% fee in FLSA claim to be "reasonable" and "in line with [fees] awarded by other courts in in this district"); *Segroughni v. Advanus Rest., Inc.,* 2015 U.S. Dist. LEXIS 64602, *2 (M.D. Fla. May 13, 2015) ("An attorney's fee... which is one-third of the settlement fund... is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles,* 2012 U.S. Dist. LEXIS 153786, *11-19 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Hosier v. Mattress Firm, Inc.,* 2012 U.S. Dist. LEXIS 94958, *15-17 (M.D. Fla. Jun. 8, 2012) (approving a common fund FLSA settlement which provided 30% of the common fund for attorneys' fees and costs); *Morefield v. NoteWorld, LLC,* 2012 U.S. Dist. LEXIS 54664, *14-16 (S.D. Ga. Apr. 18, 2012) (class settlement approved with 33 1/3% of the common fund payable as attorneys' fees); *Atkinson v. Wal-Mart Stores, Inc.,* 2011 U.S. Dist. LEXIS 150274, *18-21 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of maximum common fund apportioned as attorney's fees); *In re Terazosin Hydrochloride Antitrust Litig.,* 2005 U.S. Dist. LEXIS 43082, *18-21 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they

prosecuted the action on a wholly contingent basis); *Gutter v. E.I. DuPont DeNemours & Co.*, 2003 U.S. Dist. LEXIS 27238, *11-13 (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the settlement fund as attorneys' fees); *see also, e.g., Burkholder v. City of Ft. Wayne*, 750 F.Supp.2d 990, 997 (N.D. Ind. 2010) ("33.3% of the common fund 'is comfortably within the range typically charged as a contingency fee by plaintiffs' lawyers' in an FLSA action"). The prevalence of fee awards of one-third of the common fund in more-standard FLSA claims clearly supports a fee award of one-third of the common fund created here.

## II. Plaintiffs' Costs are Recoverable from the Fund.

Expenses incurred by an attorney which would normally be charged to a fee paying client are recoverable. *See, e.g., Weller v. Van Finger*, 2010 U.S. Dist. LEXIS 59733, *18 (S.D. Ala. Jun. 15, 2010); *see also, e.g., Chalmers v. City of L.A.*, 796 F.2d 1205, 1216 (9th Cir. 1986), *reh'g denied and opinion amended*, 808 F.2d 1373 (1987). Plaintiffs' Counsel will incur approximately $3,082.01 in expenses prosecuting this case. Potashnick Decl., ¶ 17; Paul Decl. ¶ 12. These expenses are the type of expenses charged to hourly paying clients, including expenses for the filing fee, process service, travel, copying and printing, and postage for mailings to the class.

## Conclusion

Plaintiffs' Counsel's request for one-third of the common fund as an attorneys' fee, plus reimbursement of their costs, is amply supported by the applicable legal standard

and the excellent result Plaintiffs' Counsel achieved for the class.

Respectfully submitted,

| | |
|---|---|
| Ralph Jordan (GA Bar #404977)<br>345 Eastcote Dr.<br>Atlanta, Georgia 30350<br>Telephone: (404) 449-4861<br>ralph.a.jordan@gmail.com<br><br><br>**PAUL McINNES LLP**<br>*/s/ Richard M. Paul III*<br>Richard M. Paul III (MO Bar #44233)<br>(admitted *pro hac vice*)<br>601 Walnut Street, Suite 300<br>Kansas City, Missouri  64106<br>Telephone:    (816) 984-8100<br>Facsimile:     (816) 984-8101<br>paul@paulmcinnes.com | **WEINHAUS & POTASHNICK**<br>*/s/ Mark Potashnick*<br>Mark A. Potashnick (MO Bar # 41315)<br>(admitted *pro hac vice*)<br>11500 Olive Blvd., Suite 133<br>St. Louis, Missouri  63141<br>Telephone:    (314) 997-9150<br>Facsimile:     (314) 997-9170<br>markp@wp-attorneys.com |

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served via the Court's electronic filing system on June 20, 2016.

*/s/ Mark Potashnick*